**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CHASE EPPS, #M25818, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:25-cv-02186-RJD |
| | ) | |
| JOHN M. BARWICK, III, | ) | |
| PINCKNEYVILLE CORRECTIONAL | ) | |
| CENTER, SERGEANT WALKER, | ) | |
| and SERGEANT BRAYNT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Chase Epps brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for allegedly unconstitutional living conditions, excessive force, and staff retaliation at Pinckneyville Correctional Center. He seeks money damages. The Complaint (Doc. 1) is subject to screening under 28 U.S.C. § 1915A,[1] which requires the Court to review and filter out portions that are legally frivolous or malicious, fail to state a claim for relief, or request money damages from an immune defendant. *Id.* At this stage, the allegations are construed liberally in favor of the *pro se* plaintiff. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

In the Complaint, Plaintiff describes the living conditions, excessive force, and staff retaliation he endured at Pinckneyville Correctional Center, and the allegations are summarized below (Doc. 1, pp. 5-11):

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

1

**1.      Living Conditions**

Plaintiff was housed in two filthy cells for six months after his arrival at Pinckneyville on October 28, 2024. *Id*. at 5. Feces were smeared on the walls and doors, including the chuckhole door used for food delivery. *Id*. at 5, 9. Inmates were denied hygiene items, cleaning supplies, and personal protective equipment (PPE). Officers Brinmyer and Hungate joked about how badly the inmates smelled. Plaintiff was denied sheets, blankets, and clothing for three days in his second cell. He was not allowed outside for recreation or yard for months. *Id*.

At the time, Pinckneyville's water was contaminated. Warden John Barwick, III, and other prison officials knew about the problem, but they offered inmates no meaningful alternative to the bad water. Each morning, Plaintiff received four ounces of juice and two half-pints of milk, but the milk was often spoiled. When a boil order went into effect, Plaintiff had to drink contaminated water simply to stay hydrated. After consuming it, he suffered from throat, stomach, and kidney pain. When avoiding the water, he suffered from dehydration. *Id*.

Plaintiff was denied medical care for these symptoms. He began submitting written requests for treatment on November 9, 2024. He was called to the health care unit (HCU) in December 2024, but the staff refused to treat him. As his health deteriorated, Plaintiff was unable to attend groups and walk-ins. He described his symptoms to another inmate, who revealed that the prison failed water quality tests and suggested the water was making him ill. *Id*. at 5-6. After learning this, Plaintiff requested an appointment with a doctor to discuss his kidney pain. *Id*. at 6. Nurse Kelly responded, "[T]hats everybody problem find a new one." *Id*. (errors in original).

When a boil order went into effect on February 10, 2025, Plaintiff had no way to boil his water. He informed C/O Shirey, and the officer said that he was unaware of the boil order and unable to help. Plaintiff complained to Sergeant Walker, who laughed and admitted that the prison

was not in compliance with standards set by the Illinois Environmental Protection Agency (IEPA). *Id*. at 9. Other inmates pointed out that a boil order had been in effect since August 2024, and they asked why bottled water had not been distributed. Less than a day later, second shift staff began distributing bottled water to inmates in segregation, and they continued to do so for one or two days. After that, bottled water was available for purchase in the commissary. *Id*. at 6.

In mid-February 2025, Nurse Diana met with Plaintiff in the HCU to discuss his symptoms. When Plaintiff said that his symptoms began three months earlier and suggested that bad water was the culprit, Nurse Diana said, "[Y]es, its defently the water it seems like you were exposed to raw elements." *Id*. (errors in original). She explained that the facility was late in responding to the public service announcement.[2] She referred him to a doctor and prescribed him Tylenol (325 mg), antacid (500 mg), and calcium. The medicine and supplements did nothing. *Id*.

Plaintiff asked Nurse Tiffany about the status of his doctor's appointment soon thereafter. She could not believe that Plaintiff had not seen a doctor. Nurse Diana met with him again and offered him the same medicine and supplements, which Plaintiff refused because they were ineffective. He requested antibiotics for a suspected kidney infection, and his request was denied. *Id*. at 7. He received no other medical appointments or treatment. *Id*.

Plaintiff filed a dozen or more grievances at each level of the IDOC's grievance process, and he also sent written complaints to the Governor of Illinois. *Id*. at 5. Grievance Counselor Tyler King was dismissive of his complaints. Other prison officials also ignored them. *Id*.

2.     **Excessive Force**

Plaintiff received a sentence calculation slip on March 14, 2025. The slip indicated that

---

[2] Plaintiff claims that Pinckneyville has been cited for noncompliance with the IEPA's water quality standards since at least November 2022. He describes a specific citation issued on or around April 21, 2023. Although Acting CAO David Mitchell allegedly offered to enter into a Compliance Commitment Agreement, the issues persist. *Id*. at 7.

time was taken from him, even though he never met with the Parole Review Board (PRB). *Id*. at 9. He became upset and requested a crisis team. In response, Sergeant Walker approached Plaintiff's cell and sprayed two bottles of mace into it. To stop the stream of pepper spray from entering his cell, Plaintiff poured water on the chuckhole door and used his shirt to fan the mace. The officer closed the chuckhole door. Plaintiff passed out for approximately twenty minutes. He was then dragged to the shower, where Sergeant Braynt sprayed mace directly into his face when he regained consciousness. Plaintiff could not breathe. A med tech told tactical team officers that Plaintiff needed fresh air. The officers laughed and took him to a cell covered in feces. *Id*. at 10.

3.      **Retaliation**

After Plaintiff filed grievances with Warden John Barwick, III, IDOC Director Latoya Hughes, and Governor J.D. Pritzker, prison staff retaliated against him. They denied him food, medical care, mental health treatment, recreation, groups, education, barber shop, and law library access. Plaintiff was subjected to prolonged stays in segregation and extended lockdowns without an adjustment committee hearing or parole board hearing. He blames this retaliation on Pinckneyville Correctional Center. *Id*. at 11.

PRELIMINARY DISMISSALS

Plaintiff mentions the following individuals in the statement of his claim but does not identify them as defendants: Officers Brinmyer, Officer Hungate, Nurse Kelly, Nurse Diana, Nurse Tiffany, C/O Shirey, Tyler King, IDOC Director Latoya Hughes, Governor J.D. Pritzker, tactical team officers, and other prison officials. (Doc. 1, pp. 5-11). Because Plaintiff did not name them as parties, the Court will not treat them as defendants. FED. R. CIV. P. 10(a) (title of complaint "must name all the parties"). All claims against them are considered dismissed without prejudice from this action.

4

## DISCUSSION

Based on the allegations, the Court designates the following claims in the Complaint:

Count 1:    Eighth Amendment claim against Defendants Barwick and Walker for subjecting Plaintiff to contaminated water, filthy living conditions, no hygiene supplies, no cleaning supplies, no PPE, inadequate bedding, inadequate clothing, and no outdoor recreation at Pinckneyville.

Count 2:    Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's throat, stomach, and kidney pain at Pinckneyville.

Count 3:    Eighth Amendment claim against Defendants Walker and Braynt for using excessive force against Plaintiff by spraying his cell and face with mace when he requested a crisis team on or around March 14, 2025.

Count 4:    First Amendment claim against Pinckneyville Correctional Center for retaliating against Plaintiff when he filed grievances or complaints with Warden Barwick, IDOC Director Hughes, and Governor Pritzker.

Any other claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim for relief if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Count 1

An Eighth Amendment claim arising from unconstitutional living conditions in prison consists of an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 824, 834 (7th Cir. 1994). To satisfy the objective component, Plaintiff must describe a sufficiently serious deprivation of a basic human necessity, such as food, shelter, clothing, exercise, or medical care. *Johnson v. Prentice*, 29 F.4th 895, 898 (7th Cir. 2022). To satisfy the subjective component, Plaintiff must describe deliberate indifference by each defendant. *Farmer,* 511 U.S. at 837.

Plaintiff complains of inadequate shelter, bedding, clothing, outdoor recreation, cleaning supplies, and hygiene items but fails to name any defendants who were notified about these

5

conditions or responded to them with deliberate indifference. That portion of Count 1 arising from inadequate shelter, bedding, clothing, recreation, cleaning supplies, and hygiene items shall be dismissed without prejudice for failure to state a claim against the defendants.

Plaintiff also complains of unsafe and/or contaminated water at Pinckneyville. According to the allegations, Plaintiff complained about the water quality directly to Sergeant Walker, who admitted that the water was bad and laughed off the issue. Plaintiff also complained about the water in a dozen grievances sent to Warden Barwick, and the warden took no action to remediate or otherwise address the problem at Pinckneyville. Count 1 shall proceed as a contaminated water claim against Sergeant Walker and Warden Barwick. Because no other defendants are mentioned in connection with this claim, it shall be dismissed without prejudice against them.

**Count 2**

An Eighth Amendment claim for inadequate medical care also consists of an objective and subjective component. To proceed with this claim, Plaintiff must set forth allegations describing a sufficiently serious medical condition (*i.e.*, an objective standard) and deliberate indifference by each defendant (*i.e.*, a subjective standard). *Ollison v. Gossett*, 136 F.4th 729 (7th Cir. 2025).

As for the objective component, Plaintiff alleges that he suffered from pain in his throat, stomach, and kidneys after consuming bad water. His condition was never diagnosed, so it is unclear whether it was sufficiently serious to support this claim. For purposes of this Order, however, the Court assumes it was.

As for the subjective component, Plaintiff mentions no defendants who responded to his symptoms with deliberate indifference. He only refers to non-parties, including Nurse Kelly, Nurse Diana, and Nurse Tiffany. Liability under § 1983 hinges on personal involvement in a constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Plaintiff has not

6

shown any personal participation by a defendant in this constitutional deprivation. Accordingly, Count 2 shall be dismissed without prejudice for failure to state a claim against any defendants.

### Count 3

The Eighth Amendment protects inmates from physical force that amounts to "unnecessary and wanton infliction of pain." *Whitaker v. Dempsey*, 144 F.4th 908, 922 (7th Cir. 2025) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and quoting *Ingraham v. Wright*, 430 U.S. 651, 670 1977)). Force that is used in a good-faith effort to restore or maintain discipline is not excessive. *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010). Force is "unnecessary and wanton" when it is applied "maliciously and sadistically" to cause harm to an inmate. *Forrest*, 620 F.3d at 744. (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). When considering whether force was applied maliciously, the district court considers: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of injury inflicted; (4) the threat posed by the plaintiff to officers and other inmates, as perceived by the responsible officials; and (5) any efforts made to temper the amount of force used. *Whitaker v. Dempsey*, 144 F.4th at 922-23 (citing *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019); *Whitley v. Albers*, 475 U.S. at 321). According to the allegations, Sergeant Walker reacted to Plaintiff's verbal request for a crisis team by emptying two bottles of pepper spray into his cell and closing the chuckhole door until he lost consciousness. Sergeant Braynt then sprayed him directly in the face with mace when he regained consciousness. Count 3 shall receive further review against Sergeants Walker and Braynt.

### Count 4

To pursue a First Amendment claim of retaliation, Plaintiff must allege that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter the protected speech; and (3) the protected speech was a motivating factor in each defendant's actions. *Antoine*

*v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012). Plaintiff alleges that Pinckneyville officials retaliated against him after he filed grievances with Warden Barwick, IDOC Director Hughes, and Governor Pritzker. He brings this claim against Pinckneyville Correctional Center.

Plaintiff's allegations do not establish a prima facie case of retaliation against anyone. The warden and the prison are the only two defendants identified in this claim. Plaintiff does not bring the retaliation claim against the warden or identify a single retaliatory act taken by the warden. Plaintiff blames the prison for miscellaneous acts of retaliation by unidentified prison officials. However, the prison is not a "person" subject to suit under § 1983. Plaintiff's claim against the prison is the equivalent of a claim against the State of Illinois for money damages. Such claims are barred by the Eleventh Amendment and the doctrine of sovereign immunity. *See Wills v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Count 4 shall be dismissed without prejudice for failure to state a claim against the defendants. Pinckneyville Correctional Center shall be dismissed with prejudice from this action.

### DISPOSITION

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A, as follows:

**COUNT 1 (bad water claim)** will proceed against **JOHN BARWICK, III,** and **SERGEANT WALKER**, and **COUNT 3** will proceed against **SERGEANT WALKER** and **SERGEANT BRAYNT**.

However, **COUNT 1 (except water claim), COUNT 2,** and **COUNT 4** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted, and **PINCKNEYVILLE CORRECTIONAL CENTER** is **DISMISSED with prejudice** and **TERMINATED** as a party in CM/ECF.

With regard to **COUNTS 1** and **3**, the Clerk's Office shall prepare for **JOHN BARWICK,**

8

**III, SERGEANT WALKER**, and **SERGEANT BRAYNT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to SDIL-LR 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to TERMINATE Defendant PINCKNEYVILLE**

9

**CORRECTIONAL CENTER as a party in CM/ECF.**

       IT IS SO ORDERED.

       DATED:    April 1, 2026          *s/ Reona J. Daly*
                                      **REONA J. DALY**
                                      **United States Magistrate Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court now, unless specifically directed to do so.